The next case today is Wivaldo Costa-Souza v. Merrick B. Garland, Appeal No. 21-1406. Attorney Macarius, please introduce yourself again for the record and proceed with your argument. May I please, Your Honor, Senator Macarius, for Petitioner Costa-Souza? Please begin. Thank you, Your Honor. Before you begin, if you could clarify something that I've been reading the briefs and the opinions below. Can you make clear that your client was always, during the almost, I think, 15, 16, 17 years, he always remained, after he ended up in Massachusetts, until these proceedings, he always remained in the United States. Am I correct? Correct, Your Honor. And let me ask you just one follow-up question, then proceed. During this period, this, I guess, whatever, 15 to 17 year period, he never affirmatively sought to contact immigration authorities to, you know, about anything. He just simply remained, correct? Correct, Your Honor, but he did file motions trying to reopen his case. Okay, but that was many, many years later, about a decade and a half, correct? To be precise, it was almost seven years later. Okay, so proceed. Thank you. Thank you, Your Honor. This case is about a man who came illegally into the United States in November 2000, I'm sorry, 1994. Shortly after that, on November 12, same year, he was apprehended by immigration and he was put in a removal proceeding. He asked for the case to be removed to Massachusetts. The case was granted, the motion was granted in March 95, and he was scheduled to show up in court on April 25, 95. Unfortunately, he did not receive the notice for the hearing, and he explained that in his affidavit, as well as other witnesses' affidavit, that he has a roommate who was known to be an alcoholic and he used to burn the mail, and he kept waiting for the notice from the court to show up. The notice never came. And when the time came and he sought the service of an attorney, the attorney filed a motion to reopen the case, which was denied in 2012. Several of the motions were filed after that, and without getting in detail of each motion, but he was able to secure a witness to substantiate his testimony that he made that the roommate was known for his misbehavior. At the last motion that was filed, he tried to show other ways to reopen the case. Number one, change of country condition. He wanted to apply for asylum. He was very fearful to go back to Brazil, being an American resident for almost 28 years. That would make him targeted by the gangs. He tried to explain to the board that the condition of Brazil has changed tremendously to worse, and a lot of documents were submitted to show how bad the condition of Brazil has been. Also, he relied on... Just to understand, it's somewhat related to what Judge Helpy was just asking you at the beginning. This is a petition for review of a denial of a motion to reopen, is that right? Correct. In the 28 years that your client has been here, and even in the decade since the denial of the 2012 motion to reopen, has there been any effort to take action to remove your client? No. No action was taken. The only threatening action was taken lately by the BIA at the last paragraph of the decision, reminding him that he might be subject to a penalty of $813 for each day he remained in the United States after that. I don't know if you've been through our... Has this case been through our CAMP program for mediation of any kind? I'm not aware of the mediation on this case, no. Would you ask... I'm sorry. Go ahead. Go ahead. I'm sorry. Just so that I'm clear, what was the trigger for bringing him into the whole IJ-BIA system after more than a decade? He kept feeling the huge fear of returning to Brazil, seeing his country condition being deteriorated between the rising of gang members, and the government is giving the blind eye to all the gangs, if not even participating in their activities, and he felt if he returned with his two U.S. children, that would even make him more of a target, because the gangs will think that he came up with a huge wealth from the United States and will demand money. The kidnapping is on the rising. We submitted massive articles to show how dangerous it is the life will be for any person to go back to Brazil. Four minutes remaining. Four minutes remaining. Was it his action, his own action, his own initiative, after a decade, that brought his situation to the authorities? He was brought to the authorities shortly after he entered. Right. Ten years later, what brought him back into the system? If we are talking about the motions, your honor, the fear that he kept rising in his heart is the one that led him to file a motion. He felt more desperate, and he has lived a long time in the United States, and he was a very honorable person. He raised his family. He did not commit a crime. That was, by itself, is a ground for opening his case, Saas-Ponte, regardless of the other ground that you mentioned, which is a change of country condition and the changes. There were documents he could prove to show that he did not have notice. The notice is very important, and it's very common in the government that people do not  I'm sorry, Judge Barrett? Excuse me, Judge Barrett? Even if there's no, even aside from the notice issue, which is a challenge to the original removal order, isn't there some equitable ground for motion to reopen or cancellation of a circumstance like this that could be sought on a motion to reopen Saas-Ponte or something like that? That's correct, but in order for us to look for cancellation of removal, we have to thought termination first, because the him being put in removal proceeding by itself stops the clock for the 10-year requirement in order for us to proceed with cancellation of removal. But are you now in a position where you could proceed with it? If the case was reopened, we'll seek the termination. And there were many reasons to grant him cancellation of removal if the case was reclosed and reopened. Aside from the notice issue, is there a ground for a motion to reopen Saas-Ponte based on just hardship or something like that? That's correct, Your Honor. That's a good point, and that's what we mentioned, because we looked at the U.S. children and found out there's a lot of reasons. Has that motion been made? Yes, it was made, and the BIA denies that. Is that before this appeal? I thought we only had the notice issue in the appeal. Your Honor, in the decision that was made, if I may read that part of the decision. I believe on the second page where we mentioned reopening the case of Saas-Ponte, and they denied that. That was the decision that was made. But in your petition for review here, are you challenging that denial, too? I did. I did, Your Honor. I did in my brief. I did mention that the Saas-Ponte was not properly addressed, and he deserved to have the motion reopened, at least based on the Saas-Ponte. Because what is a better person to live in the United States than somebody who is running, with the exception of him being illegal, honorable life, married, have two children? Would you have any objection about this case being referred to our camp program for mediation? Not at all, Your Honor. Thank you. I have one last question, counsel, regarding this notion of failure in the internal workings of the household. Would Mr. Blanchett's alleged destruction of the male constitute a failure in the internal workings of the household, as discussed in the BIA case matter of GYR? Yes, but he had no knowledge of that. And also, I wanted to refer to a case that was a completely different case, but it shows how it's not unusual for the government not to send notices. It's a case that, briefly, many people came from the border recently, and they did not get a court hearing until two, three, four years later. This case is Mendez Rojas v. Wolf. It was decided in a federal court in Seattle in 2020. In this case, it ended up with settlement, because the government acknowledged, yes, we don't send people to court timely. And because of that, many people missed the deadline to apply for asylum within one year. And the government, many times, I came across many cases, Your Honors, where we have to file the asylum application before even we get to court with the service, because we knew the court system. May I continue, Your Honors? Just briefly finish this sentence. Yes, we filed the asylum application with the service, despite we knowing that person at one point is going to end up being a removal. Thank you, Your Honors. Thank you. Thank you, Attorney Macarius. At this time, please mute your audio and video. And, Attorney Doe, if you could please unmute your audio and video and introduce yourself on the record to begin. Good morning, Your Honors. My name is Linda Doe, and I represent the United States Attorney General. If I may begin, in this immigration case, the Board reasonably denied Petitioner's motion to reopen his 1995 and absentia deportation order, whereas his third bid for reopening fell over 20 years out of time. Petitioner did not show that he did not receive notice, where he personally was served an order to show cause. The hearing notice was sent to his address on the record via certified mail. The notice was not returned as undeliverable, and Petitioner further indicated that he had received other hearing notices at that address. Indeed, Petitioner indicated that he had moved away from the address of record at the time of the hearing notice and did not file a change of address form with the immigration court until 2012. Petitioner did not overcome the presumption of effective delivery, where he set forth an evolving claim. In his first motion to reopen, he alleged that he lacked notice. In the second motion to reopen, he claimed that he was not timely informed of the notice. In the third motion, now that his prior motions to reopen had been denied, he now claims that his mail was burned. Petitioner did not submit evidence overcoming this presumption of delivery, where he did not show that affidavit in support was previously undiscoverable or unpresentable. Did the BIA rely on any of the grounds for rejecting the motion to open that you're giving, or I thought it had just relied on the ground that the evidence was insufficient to overcome the presumption, not that it was an evolving claim or filed too late or any of those things. Maybe I'm mishearing it. I saw in the first page of the board's decision, I believe it's AR3, where the board notes that he provided no reason why the evidence was unavailable or previously unavailable. But in its actual substantive ruling, does it rely on that fact? I thought it just relied on the fact that it just stated it didn't overcome the presumption. I believe the entire of the agency's decision supports, again, it's one of the requirements to establish in support of a motion to reopen is to present previously unavailable evidence. But we only review the actual holdings of the agency. And so I'm just asking, I thought the agency in actually rejecting the argument just says it didn't overcome the presumption on the basis of the brother-in-law's affidavit. Maybe I misread it. Page AR3, there is no other evidence substantiating these claims, nor is there an explanation as to why such statements were previously unavailable. I see. OK, great. Thank you. Again, Your Honor, a petitioner did not show that he overcame the presumption where his own affidavit claimed that in the spring of 1995, Mrs. Blanchett, his former roommate's wife, informed them of correspondence that she had found from the immigration court. And this purportedly prompted him to realize that he had missed his 1995 hearing and had a deportation order issued against him. Despite this knowledge, petitioner waited 17 years before filing his first motion to reopen. Is there a pending? What is the status of the motion to reopen Sua Sponte in this petition for review? Well, Your Honor, petitioner did not show that he had a liberty interest in such a request, and he did not show that the board legally erred in refusing to invoke a Sua Sponte authority. Again, petitioner moved away, didn't show lack of notice regarding the hearing that he felt up here, and he didn't establish changed country conditions. In the opinion, the board says we at the last paragraph, we discern no exceptional circumstances that would warrant reopening pursuant to our Sua Sponte authority. And then the final sentence says the board and the immigration judges have no authority to grant equitable remedies or to confer general humanitarian relief. Again, Your Honor. You cite a BIA case. Is there any, you know, a circuit court authority to that proposition? Well, first of all, petitioner did not request equitable tolling, and he doesn't show that he exercised due diligence in filing his motion to reopen to warrant equitable tolling, in this case, of the time and number for governing the motions to reopen. And further, the court cannot, I mean, the agency cannot grant relief for which he has not established eligibility for. Assuming, Your Honor, that the board reopened, it would be for his asylum claim for which he has not demonstrated prima facie eligibility for relief. You know, petitioner previously mentioned change, you know, personal circumstances, but he did not show that constitutes a change in country conditions, warranting an exception to that bar. And petitioner did not indicate that he had filed an adjustment application. So it would not be before the court. It's unexhausted. So to reopen in this, you know, proceeding would be to pursue an asylum claim for which he did not demonstrate eligibility. Petitioner premised his claim on a fear of gang violence and crime and corruption. Was that the sole basis for the motion to reopen to respond? To respond is because he generally claimed that he warranted a federal exercise of discretion. Right. But to what end? And then that is part of the agency's decision. I mean, he hasn't shown due diligence. He hasn't shown that he wants an exception. He hasn't shown, you know, change country conditions. He hasn't shown lack of notice. What is the I mean, it's if I'm understanding the record. He entered without inspection young, been in the country 28 years as two U.S. citizen children. There's been no discernible effort by the United States government to remove him during those three decades. There's been two efforts by him to file motions to reopen. And now there's this third one. I guess I'm just puzzled. What is the government's position is that he should just stay in limbo for another three decades? I don't fully understand what the government's position is here. Oh, different positions that petitioner has requested adjudication of his petition for review of the agency's decision, which is found and grounded in the law is neither arbitrary. He has not shown that the board's decision was either arbitrary or rational or in contravention of the law. Would you have more minutes remaining? This was referred to our mediation program. Your Honor. Again, to the petitioner is not to say that the petitioner would like to seek some prosecutorial discretion with immigration customs formant, he has not precluded from doing so separate and apart from these immigration proceedings. So is that you would oppose going into the camp proceeding or you have no objection to us to referring it to the camp program and seeing what happens? When we respond, it would defer to the court decision in that instance. I would like to point out that petitioner is a petitioner, has not set forth a request or an interest in doing so. Counsel, let me ask you, do you have any authority requiring the petitioner during all these many, many years for him? Even even assuming he never received the notice or his roommate destroyed it. But, you know, seven years go by before the removal or the first removal order. Is there any authority that he has an affirmative obligation to notify immigration authorities? Hey, I haven't received the notice or I moved where I'm living here. I know you sort of argue that in your brief that he didn't do anything. To warrant an exception on exceptional circumstances under 1229 AB 5C1, petitioner would have had to file a motion to reopen within 180 days. But in the sense that he claims that, you know, his roommate burned his mail and this constitutes an exceptional circumstance. And he admitted he was aware that he was in immigration proceedings. He would have to warrant an exception and reopening under that basis. He would have had to file his motion within 180 days of the in absentia deportation order. But my question is, is there a way that he should have notified the United States even before those motions? You know, even before the 180 days or perhaps after. But, you know, I no longer live here. You know, reach me here or send. You know, I haven't received any information. Does he have that affirmative obligation? Yes, your honor. According to the INA, petitioner is required to inform the immigration court of any change of address immediately. And under the regulations, it says it's been five days of the address change. Petitioner did not do so. Okay. And let me ask you another question. If you know, because I can't see this, at least from from the briefs. Is this are we talking about a petitioner? He's got two children. He's been living. You know, I see no evidence. He has not. This is not a criminal illegal alien. But is there any evidence this gentleman, for example, is working, filing tax returns or some other information that the government could see? You know, this, you know, from, you know, IRS returns, you know, he's he's doing everything that we can locate him. Is there any evidence of that here in the record or not? Not that I can recall, your honors. I did not see an adjustment of application form or evidence in support of such a claim. Accordingly, it's unexhausted. It wasn't before the agency. Agency has no opportunity to adjudicate such a claim where he did not set one step one for. And, you know, normally it would be as such evidence in support of a such a claim. Sorry. Respond to the petitioner's argument that the BIA failed to provide sufficient. Recent discussion of the country conditions. The board claims that petitioner submitted evidence reflecting economic and political turmoil in Brazil in 1995. And as well as an evidence of an economic recession in the country from 2016 to 2018. But he didn't show that this compensated a deterioration in conditions. And he did not establish that as material to his underlying claim for asylum. The extent that he submitted evidence reflecting ongoing and persistent conditions of crime, violence and corruption in the country from 2012 to 2018. He presented no evidence reflecting what these conditions were like in 1995 to show that it constituted a material change in country conditions. To explain that, you know, the 20-year, over 20-year delay in filing his motion. So, yes, the board did explain, you know, and consider the country conditions evidence submitted with petitioner's motion to reopen. In light of the foregoing. May I close? Yeah, go ahead. In light of the foregoing, petitioner has not shown that the board abused his discretion by denying his belated and number barred motion to reopen. The government rests on its grief. Thank you. Thank you. That concludes the argument in this case. Attorney Macarius and Attorney Doe, you should disconnect from the hearing at this time.